```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KALIEF RETHAGE,           )
          Petitioner,     )
                          )
          vs.             )  Civil Action No. 05-289
                          )  Judge Gary L. Lancaster
J. BARRY JOHNSON,         )  Magistrate Judge Lisa Pupo Lenihan
          Respondent.     )
```

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.     RECOMMENDATION

It is respectfully recommended that the Petitioner's Motion for Relief From Judgment pursuant to F.R.Civ.P. 60(b)(6) be denied.

II.    REPORT

Petitioner, Kalief Rethage, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, wherein he raised three claims of ineffective assistance of counsel with regard to his convictions for Murder in the Third Degree, Aggravated Assault and Recklessly Endangering Another Person. In a Report and Recommendation dated May 18, 2007 it was recommended that his Petition be denied. On June 4, 2007 District Judge Gary Lancaster denied the Petition for Writ of Habeas Corpus and adopted the Report and Recommendation as the opinion of the Court.

A. Relevant Facts

For purposes of deciding the present motion, it is helpful to have as background the facts of Petitioner's

underlying conviction. Those relevant facts, as set forth by the Superior Court on direct appeal are as follows.

> Appellant, Kalief M. Rethage, appeals from the November 22, 2000 judgment of sentence entered in the Court of Common Pleas of Westmoreland County. Appellant received a term of 17½ to 35 years imprisonment upon his convictions, at a jury trial, for third degree murder, aggravated assault and recklessly endangering another person. We affirm.
>
> On February 26, 1999, Pierre Johnson, Narue Finn and Appellant traveled from Pittsburgh to Tywann Smith's home in Jeanette, Westmoreland County. The three men arrived at Smith's home on 708 Scott Avenue and Finn went inside for five to ten minutes. Finn then left the residence and, around 4 p.m., Johnson and Appellant entered the home. Johnson asked to speak to Smith and proceeded upstairs. Remaining downstairs, Appellant brandished a gun in the presence of Mara Ray, Erica Goode, and three small children and instructed Ray to "lay the f*** down." Shortly thereafter, an argument broke out upstrairs, and a gun was discharged through the floor. Smith came down the stairs, told Appellant he had given Johnson "everything" he had, and ran into the kitchen. Appellant followed and shot Smith four times fatally wounding him. Johnson and Appellant fled the scene.
>
> In the minutes after the shooting, witnesses made 911 calls from the scene reporting the shooting and describing the perpetrators. Witnesses stated that two black men entered the home, demanded money, and then shot Smith. Furthermore, a neighbor, Michelle Braun, called 911 to report that a burgundy Eagle Premier, with Pennsylvania license number BVT-7188, had been circling neighboring streets in the minutes before the shooting. Braun met her daughters at the bus stop at 3:25 p.m. and

3:51 p.m. on the day of the shooting and saw two black men in the front seat of the Eagle on each trip. The dispatcher later confirmed that this vehicle was registered to an individual named Narue Finn of Pittsburgh.

Patrolman Thomas Harris of the North Huntingdon Township Police Department heard a dispatch message at approximately 4:09 p.m. that a shooting had occurred on Scott Avenue and that several suspects had left the area. At 4:20 p.m., Officer Harris received a 911 dispatch to be on the lookout for a suspicious vehicle and was given the specific information provided by Braun. At this time, he also learned that the car was registered to Narue Finn, a resident of Pittsburgh.

While proceeding eastbound on Route 30, Officer Harris observed two black males in a burgundy Eagle heading westbound in the opposite lane. Officer Harris verified the vehicle's registration number through his side rear-view mirror. The Officer then turned to follow the vehicle and called the dispatcher to confirm the license number. Despite heavy traffic, Officer Harris pulled the vehicle over and proceeded toward it with his gun in his hand. At this moment, he could only see the driver and demanded that he remain inside the vehicle. The driver proceeded to stick his head out of the window. Officer Harris then observed a second and third person "pop out" from below the front seat and from the backseat. Despite the Officer's command that the passengers remain in the vehicle, each got out of the vehicle, jumped over the guard rail and fled into an adjoining cemetery. The driver, Narue Finn, remained in the vehicle and was taken into custody.

While other officers attempted to locate the two passengers, Officer Harris returned to the vehicle having observed the front seat passenger leave his door open

> when he fled the car. Concerned that there might be weapon inside, the Officer knelt down, stuck his head through the open door and looked underneath the front passenger seat. Without touching the vehicle, Officer Harris observed a revolver under the seat with live rounds in its chamber. Subsequent to this discovery, the two remaining passengers, Appellant and Johnson, were apprehended at the scene.

Sup. Ct. Op., 9/14/2001, at pp. 1-4 (internal record citations and footnotes omitted) (Plaintiff's App. pp. 1034a-1037a).

On September 13, 2000, in the Court of Common Pleas of Westmoreland County, Pennsylvania, a jury found Petitioner guilty on all charges. After unsuccessfully seeking relief from his convictions in state court on direct appeal and in a post-conviction proceeding pursuant to the Pennsylvania Post-Conviction Relief Act (PCRA), Petitioner filed with this Court a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 wherein he raised three claims of ineffective assistance of counsel. As set forth above, his Petition was denied. An appeal was filed with the Third Circuit but Petitioners application for a certificate of appealability was denied.

### B. Legal Representation

Petitioner was represented by Attorney Bruce Antkowiak during his PCRA proceedings. Attorney Adam Cogan, counsel herein, worked with Attorney Antkowiak and was familiar with Petitioner's case. Petitioner asked both Attorney Cogan and Attorney Antkowiak to represent him in his federal court application for habeas

corpus relief. (Doc. 28, p.2). Attorney Cogan agreed and was appointed to represent Petitioner by this Court on April 22, 2005(Doc. 4).

## C. Discussion

Federal Rule of Civil Procedure 60(b)(6) provides that "On motion and just terms, the court may relieve a party or its legal representatives from a final judgment, order, or proceeding for the following reasons:... (6) any other reason that justifies relief." Whether to grant relief is at the discretion of the court. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §2857. The Third Circuit has ruled that a Rule 60(b)(6) motion can only be granted in extraordinary circumstances. Pridgen v. Shannon, 380 F.3d 721,728 (3d Cir. 2004), citing Page v. Schweiker, 786 F.2d 150, 158 (3d Cir. 1986), See also, Turner v. Dragovich, 163 Fed. Appx. 97,99, 2006 WL 26094 (C.A.3(Pa.)).

Before ruling on the merits of Petitioner's Rule 60(b)(6) Motion, the Court must determine whether that motion is a second or successive Section 2254 habeas motion. Such a ruling is necessary because the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub.L. No. 104-132, 110 Stat. 1214, limits a petitioner's ability to bring a second or successive habeas petition. *See* 28 U.S.C.§2244(b).[1] In Pridgen

---

1. That section of the AEDPA provides, *inter alia,* as follows:(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(continued...)

v. Shannon, 380 F.3d 721, 727(3d Cir. 2004) the court held that "...in those instances in which the factual predicate of a petitioner"s Rule 60(b)motion attacks the manner in which the earlier habeas judgment was procured and not the underlying conviction, the Rule 60(b) motion may be adjudicated on the merits.  However, when the Rule 60(b) motion seeks to collaterally attack the petitioner's underlying conviction, the motion should be treated as a successive habeas petition."

The motion before this Court does not seek to attack the Petitioner's underlying conviction but rather focuses on the question of whether or not Petitioner's counsel had a conflict of interest during his representation of Petitioner. Therefore, the Court has jurisdiction to consider this motion. See also Harper v. Vaughn, 272 F. Supp. 527 (E.D. Pa. 2003).

In his Motion, Petitioner alleges that he "just found out" that the attorney who was appointed to represent him, i.e. Adam Cogan, also represented the Commonwealth's "jailhouse informant", Jackie Williams, during pretrial stages. Petitioner avers that because of this, Attorney Cogan was not ethically able to represent Petitioner in this case.

In his court ordered  response, Attorney Cogan advises that he represented an individual by the name of Jackie

---

1.  (...continued)

Williams while Cogan was employed as a public defender in Westmoreland County in 1999(Doc. 28, p.3). Cogan confirms that Jackie Williams provided the police with information concerning Pierre Johnson's statements to Williams about the crime at issue. A report of those statements was provided to the Petitioner as part of the Commonwealth's discovery materials prior to his criminal trial. Id. This occurred after Cogan's representation of Williams in 1999 and Cogan did not represent Williams during the pendency of these proceedings. Id.at 3. In addition, the statements made by Williams concerned admissions made by Johnson, not the Petitioner; and finally, Jackie Williams never testified at Petitioner's trial.

   Attorney Cogan makes a number of legal arguments as to why his representation of Rethage in this matter was not in any way a conflict of interest and the undersigned agrees with his conclusion.

   In Cuyler v. Sullivan, 446 U.S. 335 (1980), a case involving a federal writ of habeas corpus, the underlying facts were that two attorneys represented the petitioner and two co-defendants in three separate trials. Petitioner in that case argued that this was a conflict of interest, depriving him of his rights under the Sixth Amendment. The Supreme Court stated that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Id. at 350. The Court went on to state "[W]e hold

7

that the possibility of conflict is insufficient to impugn a criminal conviction...a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Id. Attorney Cogan did not actively represent conflicting interests. In fact, he did not even represent Petitioner and the informant at the same time. The informant was not accused of the crime, did not testify at the trial and there is no evidence that Cogan's prior representation of the informant affected his performance in Rethage's habeas corpus petition. Williams's statements regarding the murder played no role in the grounds that formed the basis of the habeas petition before this Court.

In Reyes-Vejerano v. United States, 276 F.3d 94 (1st Cir. 2002)appellant filed a habeas corpus petition arguing ineffective assistance of counsel based, *inter alia,* upon a conflict of interest. Appellant/petitioner claimed that his counsel was the subject of a DEA drug investigation related to another client of his and was concerned with not irritating the government in petitioner's case. It was further claimed that counsel represented four other people who were charged, along with petitioner, with operating a large-scale drug trafficking enterprise. Both the district court and the appellate court reviewed the record to determine if there was any advice given during the trial that would have been motivated by the alleged conflict. This was found not to have been the case. The district court concluded that the petitioner had not shown that

the lawyer faced a conflict of interest at the trial, and also did not show that any of his advice was motivated by his representation of others. Id. at 100. The circuit court agreed and found that appellant did not show any actual conflict of interest.

In United States v. Morelli, 169 F.3d 798 (3d Cir. 1999) the defendant appealed a conviction from judgment in a criminal case. One of his grounds for appeal was that the defense attorney had a conflict of interest. The appellate court, citing two previous Third Circuit cases, stated that "we have noted that an actual conflict is more likely to be found where 'an attorney takes positive steps on behalf of one client prejudicial to another' as opposed to cases where the attorney's actions are based on inaction and are passive." Id at 810. The court further stated that "an actual conflict is more likely to occur in cases of joint representation – representation of more than one defendant at the same trial – rather than simply multiple representation – representation of defendants in different trials...." In the latter situation, the court set forth the following standard:

> In order to establish an actual conflict the petitioner must show two elements.  First he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued.... Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's and other loyalties or interests.

9

<u>Id</u>.  The situation before this Court does not involve the representation of more than one defendant at the same trial. It is not even the representation of defendants in different trials.  In addition, Rethage makes no argument that Cogan failed to pursue some strategy in his habeas petition that would have been more successful than the arguments made.  It is the opinion  of this Court that attorney Cogan did an excellent job in presenting Rethage in his habeas corpus petition and the Court is at a loss to discern how any concern for the interest of the informant Williams would have impacted Cogan's arguments in the habeas petition.

   Therefore, no conflict of interest is found on the part of Attorney Cogan and there are no extraordinary or special circumstances that justify relief for Petitioner under Rule 60(b)(6).

III. <u>CONCLUSION</u>

      For the foregoing reasons, it is respectfully recommended that Petitioner's Motion for Relief From Judgment pursuant to F.R.Civ.P. 60(b)(6) be denied.

      In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have ten (10) days from the date of service of

the objections to respond thereto.  Failure to timely file

objections may constitute a waiver of any appellate rights.

```
                              _____
                              Lisa Pupo Lenihan
                              U.S. Magistrate Judge
```

Dated: August 24, 2009


cc:   Gary L. Lancaster
      United States District Judge


      **KALIEF RETHAGE**
      EL-7596
      SCI Pine Grove
      191 Fyock Road
      Indiana, PA 15701