# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| KEITH RETHAGE, | ) | |
|---|---|---|
| | ) | Civil Action No. 05 - 289 |
| Petitioner, | ) | |
| | ) | District Judge Terrence F. McVerry |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| ATTORNEY GENERAL OF THE STATE OF PA and J. BARRY JOHNSON, | ) | ECF No. 41 |
| | ) | |
| Respondents. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons stated herein, Petitioner's Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b) (ECF No. 41) should be denied.

### II. REPORT

#### A. Background

Keith Rethage ("Petitioner") is a prisoner currently incarcerated at SCI-Pittsburgh. He petitioned this Court for habeas corpus relief on March 4, 2005, raising claims of ineffective assistance of counsel with regard to his convictions for Murder in the Third Degree, Aggravated Assault and Recklessly Endangering Another Person. In a Report and Recommendation dated May 18, 2007, it was recommended that his petition be denied. On June 4, 2007, District Judge Gary Lancaster denied the petition and adopted the Report and Recommendation as the opinion of the Court. An appeal was filed but the Third Circuit Court of Appeals denied Petitioner's application for a certificate of appealability on August 23, 2007.

1

Petitioner filed a *pro se* Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b) on June 23, 2009. In that motion, Petitioner alleged that he discovered that the attorney who was appointed to represent him in these habeas proceedings, Mr. Adam Cogan, also represented the Commonwealth's "jailhouse informant" during pretrial stages.[1] Because of that, he argued that Attorney Cogan was not ethically able to represent him in this case. After reviewing Attorney Cogan's response to Petitioner's motion, the Court concluded that his representation of Petitioner in this matter was not in any way a conflict of interest. Thus, his motion was denied on October 16, 2009. Petitioner appealed, but the Third Circuit denied his application for a certificate of appealability.

Almost three years later, Petitioner filed a Motion for Appointment of Counsel. He claimed that he had newly discovered evidence that warranted federal habeas review in a second or successive habeas action. He also claimed that Attorney Daniel Silverman had agreed to represent him in the action and would accept representation if appointed by the Court. However, because he had not yet received authorization from the Third Circuit to file a second or successive habeas petition, his motion was denied without prejudice to refile if he obtained permission from the Circuit.

On October 26, 2012, Petitioner filed a Motion for Leave to File a Rule 60 Motion claiming that a prisoner could use a Rule 60 motion to bring new facts before a district court and excuse the need for filing an application for leave to file a second or successive habeas petition. Petitioner cited to <u>Parham v. Klem</u>, 496 F. App'x 181 (3d Cir. 2012) in support of his position,

---

[1] Adam Cogan agreed to represent Petitioner in his federal court application for habeas corpus relief. He was appointed by this Court on April 22, 2005, and granted permission to withdraw on August 24, 2009.

but after explaining why Parham did not stand for the proposition for which it was being cited, and why it was dissimilar to Petitioner's case, the Court denied the motion on October 29, 2012.

Currently pending before the Court is a second Motion for Relief from Judgment filed pursuant to Rule 60(b) on January 9, 2014. Petitioner seeks relief based on the United States Supreme Court's recent ruling in McQuiggen v. Perkins, 133 S. Ct. 1924 (2013), which held that actual innocence, if proven, can serve as a gateway through which a habeas petitioner may pass whether the impediment is a procedural bar or expiration of the statute of limitations. Petitioner claims that he has two notarized affidavits from eyewitnesses that corroborate his original defense of actual innocence.[2] He argues that this Court is not barred from considering his actual innocence claim and that we cannot treat his motion as a successive habeas petition, which requires Circuit approval.

### B. Relevant Facts of the Crime

The relevant facts, as set forth by the Superior Court of Pennsylvania on direct appeal from Petitioner's judgment of sentence are as follows:

> Appellant, Kalief M. Rethage, appeals from the November 22, 2000 judgment of sentence entered in the Court of Common Pleas of Westmoreland County. Appellant received a term of 17½ to 35 years imprisonment upon his convictions, at a jury trial, for third degree murder, aggravated assault and recklessly endangering another person. We affirm.
>
> On February 26, 1999, Pierre Johnson, Narue Finn and Appellant traveled from Pittsburgh to Tywann Smith's home in Jeanette, Westmoreland County. The three men arrived at Smith's home on 708 Scott Avenue and Finn went inside for five to ten minutes. Finn then left the residence and, around 4 p.m., Johnson and Appellant entered the home. Johnson asked to speak to Smith and proceeded upstairs. Remaining downstairs, Appellant brandished a gun in the presence of

---

[2] Although Petitioner claims that these witness affidavits prove his actual innocence, in actuality, he is claiming that they corroborate his version of the events surrounding the crime; that the victim pulled a gun on him and that he was only acting in self-defense when he shot the victim. Petitioner was the only witness who testified that the victim retrieved a firearm and that the situation necessitated self-defense.

Mara Ray, Erica Goode, and three small children and instructed Ray to "lay the f*** down." Shortly thereafter, an argument broke out upstairs, and a gun was discharged through the floor. Smith came down the stairs, told Appellant he had given Johnson "everything" he had, and ran into the kitchen. Appellant followed and shot Smith four times fatally wounding him. Johnson and Appellant fled the scene.

In the minutes after the shooting, witnesses made 911 calls from the scene reporting the shooting and describing the perpetrators. Witnesses stated that two black men entered the home, demanded money, and then shot Smith. Furthermore, a neighbor, Michelle Braun, called 911 to report that a burgundy Eagle Premier, with Pennsylvania license number BVT-7188, had been circling neighboring streets in the minutes before the shooting. Braun met her daughters at the bus stop at 3:25 p.m. and 3:51 p.m. on the day of the shooting and saw two black men in the front seat of the Eagle on each trip. The dispatcher later confirmed that this vehicle was registered to an individual name Narue Finn of Pittsburgh.

Patrolman Thomas Harris of the North Huntingdon Township Police Department heard a dispatch message at approximately 4:09 p.m. that a shooting had occurred on Scott Avenue and that several suspects had left the area. At 4:20 p.m., Officer Harris received a 911 dispatch to be on the lookout for a suspicious vehicle and was given the specific information provided by Braun. At this time, he also learned that the car was registered to Narue Finn, a resident of Pittsburgh.

While proceeding eastbound on Route 30, Officer Harris observed two black males in a burgundy Eagle heading westbound in the opposite lane. Officer Harris verified the vehicle's registration number through his side rear-view mirror. The Officer then turned to follow the vehicle and called the dispatcher to confirm the license number. Despite heavy traffic, Officer Harris pulled the vehicle over and proceeded toward it with his gun in his hand. At this moment, he could only see the driver and demanded that he remain inside the vehicle. The driver proceeded to stick his head out of the window. Officer Harris then observed a second or third person "pop out" from below the front seat and from the backseat. Despite the Officer's command that the passengers remain in the vehicle, each got out of the vehicle, jumped over the guard rail and fled into an adjoining cemetery. The driver, Narue Finn, remained in the vehicle and was taken into custody.

While other officers attempted to locate the two passengers, Officer Harris returned to the vehicle having observed the front seat passenger leave his door open when he fled the car. Concerned that there might be a weapon inside, the Officer knelt down, stuck his head through the open door and looked underneath the front passenger seat. Without touching the vehicle, Officer Harris observed a revolver under the seat with live rounds in its chamber. Subsequent to this

4

discovery, the two remaining passengers, Appellant and Johnson, were apprehended at the scene.

**C. <u>Rule 60(b) Standard</u>**

Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from judgment on several grounds, including the catch-all category "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6).[3] Subsection (b)(6) is the provision under which Petitioner brings his motion. A motion under subsection (b)(6) must be brought "within a reasonable time," Fed. R. Civ. P. 60(c)(1), and requires a showing of "extraordinary circumstances." <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 535 (2005). The Supreme Court has explained that "[s]uch circumstances will rarely occur in the habeas context." <u>Id</u>. at 534. A change in decisional law after judgment is entered rarely justifies Rule 60(b)(6) relief. *See*, *e.g.*, <u>id</u>. at 536-38 (concluding that the change in habeas law brought by <u>Artuz v. Bennett</u>, 531 U.S. 4 (2000), did not amount to "extraordinary circumstances" justifying the reopening of a final judgment under Rule 60(b)(6)). *See also* 11 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2864 (3d ed. April 2013).

The Court's research did not yield a case in which a petitioner has actually been permitted to reopen a judgment under Rule 60(b)(6) based solely on the change in law brought about by <u>McQuiggin v. Perkins</u>, 133 S. Ct. 1924 (2013). In other words, it is unclear whether an

---

[3] Petitioner states that his motion is brought under Rule 60(b)(2), which states that a party may move for relief from a final judgment, order, or proceeding based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). However, it appears that Petitioner is trying to use Rule 60(b)(2) to seek reversal of the jury's guilty verdict based on newly discovered evidence that allegedly proves he is innocent of the crimes of which he was convicted. To the extent he attempts to do so, he is advised that the Federal Rules of Civil Procedure do not apply to Pennsylvania state criminal proceedings. To the extent he is actually seeking relief from this Court's Order denying him habeas relief based on this newly discovered evidence, then it appears that he can only do so pursuant to Rule 60(b)(6).

5

actual showing of innocence constitutes "extraordinary circumstances" that justifies reopening a final judgment pursuant to a Rule 60(b)(6) motion. However, this Court need not address this issue. Not only is McQuiggin inapplicable to Petitioner's case but his evidence does not establish his "actual innocence" as that term is defined by Schlup v. Delo, 513 U.S. 298 (1995).

**D. Discussion**

In McQuiggin, the Supreme Court held that actual innocence constitutes an equitable exception that can overcome a procedural bar or expiration of the statute of limitations so that a federal habeas court can adjudicate a federal habeas petition on the merits. Petitioner takes the term "procedural bar" to include "successive petitions," meaning that he believes a habeas petitioner can file a second or successive petition in the district court without first receiving permission from the appropriate court of appeals. It is unclear what exactly he means; whether it is that a habeas petitioner, such as himself, can file a second or successive habeas petition (without permission from the circuit) raising only a claim of actual innocence or whether he means that the successive habeas petition can contain new claims assuming he proves actual innocence. In any event, Petitioner is incorrect and misunderstands the holding of McQuiggin.[4]

---

[4] Petitioner seemingly relies on Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986), to support his position that successive petitions can be filed in the district courts without permission from the court of appeals assuming the petitioner makes a colorable claim of factual innocence. However, Kuhlmann was decided before the passage of the AEDPA when federal courts "employed a collection of equitable principles known as the 'abuse of the writ' doctrine to determine when a petition would be deemed abusive and thus barred from consideration on its merits." Benchoff v. Colleran, 404 F.3d 812, 816 (3d Cir. 2005) (citing United States v. Roberson, 194 F.3d 408, 410 (3d Cir. 1999)). Under the pre-AEDPA abuse-of-the-writ doctrine, if a "successive petition" raised grounds identical to those raised and rejected on the merits on a prior petition, it was thus barred. *See* Sanders v. United States, 373 U.S. 1, 15-17 (1963).

The Third Circuit Court of Appeals has held that the gatekeeping provision of Section 2244 "replaced" the pre-AEDPA abuse-of-the-writ doctrine, Benchoff, 404 F.3d at 816-17, and, therefore, if a "second or successive" habeas petition is filed in the district court without authorization from the appropriate court of appeals, the district court may dismiss for lack of jurisdiction or transfer the petition to the court of appeals, Robinson v. Johnson, 313 F.3d 128, 139 (3d Cir. 2002). This special screening process for the consideration of second or successive petitions is often referred to as a "gatekeeping mechanism." Id. It is codified in 28 U.S.C. § 2244(b)(1) and (2).

Nevertheless, McQuiggin is inapplicable to the case at bar. Petitioner's federal habeas petition was considered on the merits. This Court did not find that it was untimely or that any of Petitioner's claims were procedurally barred from review. Each claim was addressed and reviewed in accordance with appropriate habeas standards.

More importantly, the undersigned believes that Petitioner's "newly discovered evidence" is insufficient to meet Schlup's actual innocence standard. The Supreme Court has stressed that this standard is demanding and requires "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Schlup, 513 U.S. at 316. A petitioner must show, usually by way of new evidence, "that it is more likely than not, that no reasonable jury would have convicted him." Id. at 327; Glass v. Vaughn, 65 F.3d 13, 16-17 (3d Cir. 1995). This can be shown through exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. Schlup, 513 U.S. at 324; *see also* Cristim v. Brennan, 281 F.3d 404, 420-21 (3d Cir. 2002).

Petitioner's evidence includes affidavits from Mr. Luke Edward Thomas and Mr. William Herrington. These two individuals, along with Mr. James Thomas,[5] testified at an evidentiary hearing on Petitioner's second PCRA petition held before Judge Pezze on April 27, 2010. As he does here, Petitioner claimed that the testimony from these witnesses could not be obtained at or prior to trial and that if they had testified the jury's verdict would have been different. During the hearing, the witnesses testified that the victim was in possession of a firearm at the time of his death and when he confronted Petitioner in the dining room. Following the hearing, the PCRA court denied the petition finding that the testimony of Mr. James Thomas

---

[5] According to the PCRA court, Mr. James Thomas is now named Khalijah Ali Al-Akili.

and Mr. Herrington was untrue and the testimony of Mr. Luke Thomas was "replete with contradictions." The PCRA court also noted that Mr. James Thomas was available to testify and actually did testify at Petitioner's trial, albeit on behalf of co-defendant Pierre Johnson. At that time, Mr. James Thomas did not testify that he was present during the shooting but he did testify that the day before the shooting he gave the victim a gun which was identical to the gun being carried by Johnson. Thus, his testimony actually bolstered Petitioner's testimony. None of the three witnesses presented were identified by eyewitnesses to the shooting or by the police as being present.

Even though the PCRA court did not find Petitioner's witnesses to be credible, it found that the addition of their testimony at trial would have merely reiterated Petitioner's self-defense theory and not contribute to it in any meaningful way. Furthermore, it noted that the credibility of these witnesses would have been impeached and that it is highly unlikely that a reasonable juror would have credited it and rendered a more favorable verdict. The PCRA court denied the petition on September 7, 2010. On appeal, the Pennsylvania Superior Court concluded that the petition was facially untimely and did not properly invoke the jurisdiction of the Pennsylvania courts. It affirmed the denial of relief on March 9, 2012.

Lastly, to the extent Petitioner attempts to bring his claim of actual innocence as a stand-alone habeas claim, then his Rule 60(b) motion is considered a second or successive habeas petition. Under these circumstances, Petitioner is asserting a new ground for relief so the Third Circuit must first grant him permission to raise the claim in a successive petition. *See* 28 U.S.C. § 2244(b)(2). However, the Supreme Court has not yet resolved the issue of whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence. McQuiggin, 133 S. Ct. at 1931 (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993)).

Therefore, Petitioner provides no cause to disturb the Court's denial of his petition.

### III. CONCLUSION

For the foregoing reasons, Petitioner's Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b) (ECF No. 41) should be denied.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2, the parties are allowed fourteen (14) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: March 10, 2014.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

Cc: Kalief Rethage
    EL-7596
    SCI Pittsburgh
    Post Office Box 99991
    Pittsburgh, PA  15233
    (Via First Class Mail)

    Counsel of Record
    (Via ECF Electronic Mail)